Rose Spitzer v. Commissioner. Simon Spitzer v. Commissioner. Harry H. Spitzer v. Commissioner.
Spitzer v. Commissioner
Docket Nos. 7551, 7552, 7569.
United States Tax Court
1947 Tax Ct. Memo LEXIS 264; 6 T.C.M. (CCH) 332; T.C.M. (RIA) 47076; March 27, 1947
*264 David Baron, Esq., 208 N. Broadway, St. Louis 2, Mo., for the petitioners. Barnard D. Daniels, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These cases involve gift tax deficiencies for the calendar year 1941 as follows: Rose Spitzer
$ 59.40
Simon Spitzer
2,192.20
Harry H. Spitzer
538.33
The sole question for decision is the value for gift tax purposes as of September 29, 1941, of common stock in Merchants' Loan and Finance Company. Most of the facts have been stipulated and others are found from the testimony. Findings of Fact Petitioners Rose Spitzer, Simon Spitzer and Harry H. Spitzer, are individuals residing in Richmond Heights, Missouri. For the calender year 1941 each of the petitioners filed a gift tax return with the collector of intenal revenue for the district of Missouri. On September 29, 1941, Rose Spitzer made a gift of 20 shares of common stock of Merchants' Loan and Finance Company, Simon Spitzer made a gift of 296 shares of said stock, and Harry H. Spitzer made a gift of 140 shares of the stock. The Merchants' Loan and Finance Company is a corporation organized under the laws of Missouri *265 and engaged in the business of financing the purchase of automobiles, household appliances, and making industrial loans. During the year 1941 it had issued and outstanding 2,000 shares of common stock and 2,627 shares of 7 per cent cumulative preferred stock, all of the par value of $100 a share. During 1941, all of the common stock of Merchants' was owned by S. Barney Spitzer, Al Haemmerle, Raymond Boniface, the petitioners, and members of their immediate families. The stock is not listed on any stock exchange, and no sales were made during the period from 1936 to 1943, inclusive. All the common stock of Merchants' is held under a restrictive agreement whereby the stockholders cannot sell, assign, transfer, mortgage, pledge, or otherwise convey any of their shares without first notifying the other common stockholders. The latter then have a thirty-day option to purchase the stock at a sum equal to the book value at the close of the last fiscal year, with interest at 6 per cent, less any dividend paid in the interim, plus an amount equivalent to the pro rata share of the net earnings of the corporation on such shares for the last two previous fiscal years. After the expiration *266 of thirty days, if the other stockholders have not elected to buy, the stockholder may sell his stock to outsiders, but the shares continue to be subject to the option in favor of other common stockholders. The book value of the common stock as of September 30, 1940, was $121.64 per share. In 1939, Merchants' changed from the basis of a calendar year to a fiscal year ending September 30. A condensed balance sheet of the company as of September 30, 1941, was as follows: ASSETS
Installment notes and
contracts receivable
$1,630,249.87
Less: Reserve for
doubtful receivables
20,900.00
$1,609,349.87
Cash
131,514.40
Repossessions
14,682.69
Other Assets
17,592.21
Total
$1,773,139.17
LIABILITIES AND CAPITAL
Notes payable
$1,055,000.00
Customers' credit balances and in-
vestment certificates
38,851.60
Dealers' reserves
54,065.96
Accrued expenses
31,290.75
Unearned discount on installment
notes receivable
91,479.79
Total
$1,270,688.10
Net Worth: Preferred Stock
$262,700.00
Common Stock
200,000.00
Surplus
39,751.07
502,451.07
$1,773,139.17
The surplus of $39,751.07 shown in the above balance *267 sheet was after the payment of a $40,000 dividend on common stock on September 30, 1941. In the period from January 1, 1936, to September 30, 1941, net earnings of Merchants' after taxes averaged $59,226.45 a year; dividends paid on preferred stock averaged $14,609.13 per year; and dividends paid on common stock averaged $39,478.26 per year, or an average of $19.74 per share. Earnings available for dividends on common during that period averaged $22.31 per share a year. Earnings of the fiscal year 1941 available for dividends on common were $18.23 a share. The book value of common stock on September 29, 1941, was $139.88 per share and on September 30, 1941, was $119.88 per share, which was after the payment of a $20 per share dividend on common on that date. On September 30, 1941, stock in seven comparable finance companies listed on the exchange, Commercial Investment Trust Corporation, Commercial Credit Company, Household Finance Corporation, Securities Investment Company of St. Louis, Pacific Finance Corporation of California, Talcott (James), Inc., and Associated Investment Company, was selling on the market at an average of $24.50 per share, which was about 85 per cent of *268 the average year-end book value, 6.3 times average earnings, and 9.3 times average dividends. The market was declining from July 1941 through the end of the year. The average market price of the stock in the seven companies declined from $25.18 on June 30 to $18.23 on December 31, 1941. In each of the gift tax returns filed by the petitioners for 1941, the value of the common stock of Merchants' was reported at $100 per share. The Commissioner determined the taxable value of the stock to be $150 per share. On the date of the gifts, September 29, 1941, the common stock of Merchants' Loan and Finance Company had a value for gift tax purposes of $120 per share. Opinion ARUNDELL, Judge: Petitioners contend that on the basic date the common stock of Merchants' Loan and Finance Company had a value no greater than $100 per share, the figure at which it was reported in their gift tax returns, and respondent contends that the stock had a value at least as great as $150 per share. Petitioners produced the testimony of two expert witnesses, both investment bankers of St. Louis with many years' experience in buying and selling securities and in valuing securities for the purpose of making *269 recommendations to the customers of their respective concerns. One of these witnesses testified that in his opinion the stock had a value of between $95 and $100 on the basic date. In reaching his conclusion he determined that on September 30 the stock of Merchants' had a book value of about $120 a share and that at that time the stock of seven comparable finance companies mentioned in our findings was selling at an average of 85 per cent of book value. Applying this percentage to the book value of Merchants', he arrived at a figure of $102. He also determined that the market price of the stock in the seven comparable companies was about 6.03 times earnings and, applying that figure to the earnings of Merchants' per share of common for 1941, he arrived at a figure of about $109.90. He then stated that in his opinion, closely held or unlisted stock would normally sell for 10 per cent to 15 per cent below the equivalent price of listed stocks in a free market. Making corresponding reductions in the two figures, $102 and $109.90, he concluded that from $95 to $100 would be a fair market value for the stock of Merchants' on September 29, 1941. He stated that, in his opinion, the heaviest *270 weight should be assigned to the earnings' factor and, particularly in the case of a finance company, to the book value of the assets. He did not in his computations average the earnings of Merchants' over a period of years. The other witness for petitioners, using much the same method, stated that in his opinion the stock had a fair market value no greater than $90 a share on the basic date. Respondent produced no witnesses. On brief, however, he takes the stipulated facts and makes a series of computations based on book value, on capitalization of average earnings, dividends, and tangible and intangible assets, etc., which produce results ranging from considerably below to considerably above his determined value of $150 a share. We think the respondent's valuation too high in view of all the evidence. But, on the other hand, we are not inclined to agree with as low an estimate of value as that testified to by the petitioners' experts for we do not think they gave adequate consideration to all the factors pertinent to valuation of closely held stock. Furthermore, in making their computations they used book value as of September 30 - $120about - whereas book value on the date *271 of the gift, September 29, was $139.88. In the meantime, a dividend of $20 per share had been paid. Considering the company's net worth, its earning power, dividend-paying capacity, the war conditions, the government credit restrictions on installment buying, the declining market on the basic date, and the testimony of the expert witnesses, we conclude and have found as a fact that on September 29, 1941, the stock had a value of $120 a share. Decisions will be entered under Rule 50.